**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| BASEL M. SOUKARIEH | : | |
| Plaintiff | : | NO: 3:19-cv-01147 (JBA) |
| | : | |
| VS. | : | |
| | : | |
| NICHOLAS ANDRZEJEWSKI | : | DECEMBER 31, 2020 |
| Defendant | : | |

**MEMORANDUM OF LAW IN SUPPORT OF THE**
**DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**I.   PRELIMINARY STATEMENT**

The Plaintiff, Basel Soukarieh, (hereinafter, "plaintiff" or "Soukarieh") has commenced a legal action against Officer Nicholas Andrzejewski (hereinafter, "defendant" or "Andrzejewski") of the Waterbury Police Department alleging violations under the Fourth Amendment to the United States Constitution. In his single count Complaint, plaintiff seeks to recover under Sections 1983 and 1988 of Title 42 of the United States Code for alleged Constitutional violations arising from an incident that occurred in the evening hours of November 12, 2018 in the vicinity of Hillside Avenue and Pine Street in Waterbury, Connecticut. There, in a notably high-crime area, the plaintiff was approached by Officer Andrzejewski while sitting inside his car, in the dark of night, on the side of the road with the engine running and lights on. As Officer Andrzejewski approached the plaintiff's vehicle he observed movement of the operator. According to the plaintiff, he was adjusting his "frozen" cell phone GPS located in the holder on the car's dashboard. When Officer Andrzejewski requested the plaintiff's license, the plaintiff claims he handed the officer his driver's license

and his gun permit, at which point the plaintiff informed Officer Andrzejewski that he was in possession of a pistol. A brief interaction ensued which resulted in the plaintiff being searched and although denied by the defendant, the plaintiff's vehicle allegedly searched by the defendant. The plaintiff was detained for a brief period of time in order to determine the validity of the plaintiff's pistol carrying permit before ultimately being released from custody and issued a traffic summons.

The plaintiff asserts that he was subjected to an unreasonable search of his person and his vehicle as well as an unreasonable seizure of his person and personal property. To wit, $320 in cash and a flash drive containing family photos.

 In response to plaintiff's allegations, Officer Andrzejewski contends the following:

1. There are no material facts in dispute to support any claims by the plaintiff against Officer Andrzejewski for an unreasonable seizure and search of plaintiff's person because: (i) Officer Andrzejewski's action was justified at its inception; and (ii) Officer Andrzejewski's subsequent actions were reasonably related in scope to the circumstances that justified the seizure.

2. There are no material facts in dispute to support any claims by the plaintiff against Officer Andrzejewski for an unreasonable search of plaintiff's vehicle because although Officer Andrzejewski denies searching the plaintiff's vehicle, the plaintiff contends that he did. Assuming as we must the facts most favorable to the plaintiff, Officer Andrzejewski's search of plaintiff's vehicle was a justified protective search that was supported by a reasonable belief that plaintiff was dangerous and could gain immediate control of weapons.

3.  There are no material facts in dispute to support any claims by the plaintiff against Officer Andrzejewski for an unreasonable trunk search because Officer Andrzejewski had probable cause to search the trunk of plaintiff's vehicle.

4.  There are no material facts in dispute to support any claims by the plaintiff against Officer Andrzejewski as he is entitled to Qualified Immunity.

5.  Although Officer Andrzejewski denies removing and retaining $320 in cash and a flash drive, he concedes that a genuine issue of fact exists as to that claim and therefore summary judgment on that issue is not appropriate.

## II.   **STANDARD OF REVIEW**

Summary Judgment is appropriate under Federal Rule of Civil Procedure 56(c) when the moving party establishes that there is no genuine issue of material fact to be resolved at trial and that the moving party is entitled to a judgment as a matter of law.  See Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  Materiality is determined by the substantive law that governs the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In this inquiry, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Id.  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden of establishing that there is no genuine issue of material fact in dispute will be satisfied if he or she can point to an absence of evidence to support an

essential claim of the non-moving party's claim.  Celotex, 477 U.S. at 322-23.  "A Defendant need not prove a negative when it moves for summary judgment on an issue that the Plaintiff must prove at trial.  It need only point to an absence of proof on Plaintiff's part, and, at that point, Plaintiff must 'designate specific facts showing that there is a genuine issue for trial.'"  Parker v. Sony Pictures Entm't, Inc., 260 F.3d 100, 111 (2d Cir. 2001) (quoting Celotex, 477 U.S. at 324; see also Gallo v. Prudential Residential Servs., 22 F. 3d 1219, 1223-24 (2d Cir. 1994) ("[T]he moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case.").  The non-moving party, in order to defeat summary judgment, must then come forward with evidence that would be sufficient to support a jury verdict in his or her favor.  Anderson, 477 U.S. at 249 ("[T]here is not issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party").  In making this determination, the Court draws all reasonable inferences in the light most favorable to the party opposing the motion.  Matsushita, 475 U.S. at 587.  However, a party opposing summary judgment "may not rest upon the mere allegations or denials of the adverse party's pleading," Fed. R. Civ. P. 56(e), and "some metaphysical doubt as to the material facts" is insufficient.  Id. at 586 (citations omitted).   On the other hand, "[i]f reasonable minds could differ as to the import of the evidence…and if there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain summary judgment.  R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 59 (2d Cir. 1997).

### III.   <u>FACTS OF THE CASE</u>

The Defendant's Local Rule 56(a)1 Statement of Undisputed Facts submitted pursuant to Local Rule 56(a)1 constitutes the facts of this case and is incorporated herein by reference.

### IV.   <u>ARGUMENT</u>

**A.   <u>There are no Material Facts in Dispute to Support any Claims by the Plaintiff Against Officer Andrzejewski for an Unreasonable Seizure and Search of Plaintiff's Person Because: (I) Officer Andrzejewski's Action was Justified at its Inception; and (II) Officer Andrzejewski's Subsequent Actions were Reasonably Related in Scope to the Circumstances that Justified the Seizure</u>**

The issue of whether a seizure and subsequent search of an individual's person complies with the Fourth Amendment to the United States Constitution is governed by the standard set forth in <u>Terry v. Ohio</u>, 392 U.S. 1 (1968). Under <u>Terry</u>, if a law enforcement officer can point to specific, articulable facts as the basis for a reasonable suspicion "that criminal activity may be afoot," he is justified in briefly detaining an individual to investigate. <u>Terry</u>, 392 U.S. at 30.

In general, the legality of such a stop is determined by a two-part test. First, courts examine "whether the officer's action was justified at its inception" and, next, they assess whether the officer's subsequent actions were "reasonably related in scope" to the circumstances that justified the stop. <u>Id.</u> at 19-20. The analysis under the first prong - whether the officer's action was justified at its inception – depends on the type of officer action at issue. If the initial action was of a type that invokes the protections of the Fourth Amendment,

such as a seizure or a <u>Terry</u> stop[1], then the officer must be able to articulate a reasonable suspicion of criminal activity in order to justify his actions. <u>See</u>, <u>United States v. Tehrani</u>, 49 F.3d 54, 58 (2d Cir. 1995). Even so, the reasonable suspicion standard is far less exacting than what is required for probable cause. "The showing required to demonstrate 'reasonable suspicion' is considerably less than that which is necessary to prove probable cause." <u>United States v. Rideau</u>, 969 F.2d 1572, 1574 (5th Cir. 1992). In fact, "the Fourth Amendment requires only some minimal level of objective justification for the officer's actions, measured in light of the totality of the circumstances." <u>Id.</u> "The concept of reasonable suspicion, like probable cause, is not readily, or even usefully, reduced to a neat set of legal rules." <u>United States v. Sokolow</u>, 490 U.S. 1, 7 (1989) (internal quotations omitted). "Reasonable suspicion, therefore, is an intermediate standard that cannot be precisely defined, but must be determined on a case-by-case basis taking into consideration the totality of circumstances." <u>United States v. Moore</u>, No. 03-CR-32E, 2006 U.S. Dist. LEXIS 9184, at *11 (W.D.N.Y. Feb. 24, 2006).

Nonetheless, certain types of police action can be undertaken even without a showing of reasonable suspicion. If, at its inception, an encounter between an officer and a citizen falls short of a seizure then the protections of the Fourth Amendment do not apply and reasonable suspicion is not needed to justify the police action. <u>See</u> <u>United States v. Lee</u>, 916 F.2d 814, 819 (2d Cir. 1990) ("Not every encounter between a police officer and an individual is

---

[1] A <u>Terry</u> stop is functionally equivalent to a seizure under the Fourth Amendment. Indeed, it can fairly be said that a <u>Terry</u> stop is the colloquial term for a Fourth Amendment seizure. <u>See, United States v. Price</u>, 599 F.2d 494, 498-99 (2d Cir. 1979) (treating question of when <u>Terry</u> stop began and when defendant was seized as identical).

a seizure implicating the Fourth Amendment's protections."). Thus, any type of police conduct that falls short of this threshold—that of seizing an individual or effectuating a Terry stop - is legally permissible even in the absence of reasonable suspicion. See, United States v. Lopez, 432 F.Supp.3d 99, 113 (D. Conn. Jan. 10, 2020) (officer driving by defendant's car and shining spotlight inside "was not unlawful" as "the police are entitled to conduct further investigation even in the absence of reasonable suspicion"). Many types of police conduct, including some at issue here, have been classified as less than a seizure. For instance, "a police officer is free to approach a person in public and ask a few questions; such conduct, without more, does not constitute a seizure." Lee, 916 F.2d at 819; see also, Florida v. Bostick, 501 U.S. 429, 434 (1991) ("[A] seizure does not occur simply because a police officer approaches an individual and asks a few questions."). Similarly, there is "no constitutional impediment to a law enforcement officer's request to examine a driver's license and vehicle registration or rental papers during a traffic stop and to run a computer check on both." United States v. Brigham, 382 F.3d 500, 507-08 (5th Cir. 2004).

Here, the encounter between Officer Andrzejewski and plaintiff began when Andrzejewski approached plaintiff's vehicle, knocked on his window and asked to see his driver's license. This is precisely the type of "further investigation even in the absence of reasonable suspicion" that officers are authorized, indeed, expected, to pursue. Lopez, 432 F.Supp.3d at 113. As such, there are no Constitutional limitations placed on this type of police conduct. See, e.g., State v. Courchesne, 296 Conn. 622, 649 (2010) (officer action that included blocking in defendant's car with police car, approaching defendant and communicating with defendant found to be constitutionally permissible) (remanded on other

grounds). Not one of these initial actions, either individually or taken as whole, rises to the level of a seizure. Therefore, the interaction between Officer Andrzejewski and plaintiff was "justified at its inception," as the first prong of the two-part <u>Terry</u> test demands.

Moving on to the second prong of the <u>Terry</u> test - the legality of the officer's subsequent actions - the first question that must be addressed is when the seizure or <u>Terry</u> stop occurred.

"When considering the validity of a … stop, our threshold inquiry is twofold.  First, we must determine at what point, if any . . . the encounter between [the police officer] and the defendant constitute[d] an investigatory stop or seizure. . . . Next, [i]f we conclude that there was such a seizure, we must then determine whether [the police officers] possessed a reasonable and articulable suspicion at the time the seizure occurred. "<u>State v. Courchesne</u>, 296 Conn. 622, 642-643 (2010) (quoting <u>State v. Santos</u>, 267 Conn. 495, 503 (2004)) (internal quotation marks omitted); <u>see also</u>, <u>Lopez</u>, 432 F.Supp.3d at 109 ("The first step… is determining when the encounter between the officers and [the defendant] became a <u>Terry</u> stop.").

"A seizure requires either physical force . . . or, where that is absent, submission to the assertion of authority." <u>Lopez</u>, 432 F.Supp.3d at 110 (quoting <u>United States v. Swindle</u>, 407 F.3d 562, 572 (2d Cir. 2005) (internal quotations omitted)). It has been held that "to comply with an order to stop - and thus to become seized - a suspect must do more than halt temporarily; he must submit to police authority, for 'there is no seizure without actual submission.'" <u>United States v. Baldwin</u>, 496 F.3d 215, 218 (2d Cir. 2007) (quoting <u>Brendlin v. California</u>, 551 U.S. 249, (2007)). "We have . . . defined a person as

seized under our state constitution when by means of physical force or a show of authority, his freedom of movement is restrained." State v. Santos, 267 Conn. 495, 503 (2004) (quoting State v. James, 237 Conn. 390, 404 (1996)).

Here, plaintiff was first seized, for purposes of the Fourth Amendment, when Officer Andrzejewski removed him from the vehicle, faced him up against the vehicle and handcuffed him. It was not until this juncture of the interaction - the point of being removed from the car - that plaintiff "submit[ted] to police authority" on the heels of a show of "physical force" by the officer. Baldwin, 496 F.3d at 218; Swindle, 407 F.3d at 572. Consequently, it was likewise not until this juncture of the interaction when Officer Andrzejewski needed a reasonable suspicion of criminal activity to justify his actions. See, Courchesne, 296 Conn. at 642-643. Of course, by this point, Officer Andrzejewski not only had a reasonable suspicion of criminal activity but probable cause to detain the plaintiff and search his person and his vehicle. Indeed, by this point, plaintiff had told Andrzejewski that he had a gun in his possession. As soon as he learned that plaintiff had a gun, Officer Andrzejewski's reasonable suspicion of criminal activity had fully developed. The subsequent seizure and search of plaintiff's person, then, were not only supported by a reasonable suspicion of criminal activity but also "reasonably related in scope to the circumstances which justified the interference," as required under the second prong of the Terry test. Terry, 392 U.S. at 19-20.

Furthermore, the substantial body of law on the issue of officer safety provides a separate but equally compelling basis upon which the legality of plaintiff's pat-down search can be upheld. It is well-settled that "[d]uring the course of a lawful investigatory detention, if the officer reasonably believes that the detained individual might be armed and dangerous,

he or she may undertake a pat-down search of the individual to discover weapons." State v. Wilkins, 240 Conn. 489, 495-96 (1997). Here, Officer Andrzejewski's pat-down search of plaintiff more than satisfies this standard. To reiterate, plaintiff's seizure - the act of removing him from the vehicle - was supported by a reasonable suspicion of criminal activity and, therefore, legal. The reasonable suspicion of criminal activity, in this instance, was based on Andrzejewski's knowledge that plaintiff had a gun. Because Andrzejewski knew that plaintiff had a gun (plaintiff admitted as much), Andrzejewski therefore possessed not merely a reasonable belief but, in fact, **actual knowledge** that plaintiff was indeed armed and, potentially, dangerous. Viewed, as it must be, in light of the totality of the circumstances, plaintiff's pat-down search was objectively reasonable as a protective search and well within the bounds of the Constitution.

Just as plaintiff's pat-down search was objectively reasonable so too was Officer Andrzejewski's decision to detain plaintiff while he confirmed the validity of plaintiff's gun permit. Terry provides that investigative detentions are justified where predicated upon a reasonable suspicion of criminal activity. Terry, 392 U.S. at 30. However, even an investigative detention that is adequately supported by reasonable suspicion "must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." Gilles v. Repicky, 511 F.3d 239, 245 (2d Cir. 2007) (quoting Florida v. Royer, 460 U.S. 491, 500 (1983). Here, plaintiff's detention conforms with Terry and its progeny by virtue of being rooted in reasonable suspicion and appropriately tailored in scope and duration. As discussed above,

Officer Andrzejewski had reasonable suspicion to detain plaintiff once he became aware that

plaintiff was in possession of a gun. Furthermore, the detention was temporary - spanning

approximately thirty minutes - and lasted no longer than was necessary for Andrzejewski to

confirm the validity of plaintiff's gun permit. Plaintiff's approximately thirty minute detention

was "as brief as possible given the purpose of the stop." United States v. Tehrani, 49 F.3d 54,

57 (2d Cir. 1995) (holding that thirty minute detention in an airport security office was lawful

because police diligently sought to confirm the defendant's identity during this time).

**B.** **There are no Material Facts in Dispute to Support any Claims by the Plaintiff Against Officer Andrzejewski for an Unreasonable Search of Plaintiff's Vehicle Because Officer Andrzejewski's Search of Plaintiff's Vehicle was a Justified Protective Search that was Supported by a Reasonable Belief that Plaintiff was Potentially Dangerous and Could Gain Immediate Control of Weapons**

Turning to the subsequent search of plaintiff's vehicle and whether it was

constitutional, the case of Michigan v. Long, 463 US 1032, 1049 (1983) is instructive. Indeed,

Long is the seminal case on the issue of whether protective searches for weapons can

extend to vehicles in the absence of probable cause to arrest. In Long, the interaction

between the police officers and the defendant began in much the same way it did here. After

witnessing the defendant crash his car into a ditch on the side of the road, the officers

approached the defendant and asked him to produce his driver's license. Id. at 1035-36. It

was not until the officers noticed a large hunting knife on the driver's side floor of the vehicle

that the defendant was seized and subjected to a pat-down search. Id. at 1036. Although the

search of defendant's person revealed no weapons or contraband, a subsequent search of

defendant's vehicle revealed marijuana. Id. After being arrested for possession of marijuana,

the defendant attempted to suppress the evidence recovered from his car on the grounds that

it was the product of an illegal search. Id. at 1036-37. Ultimately, the U.S. Supreme Court rejected this argument, ruling instead that the marijuana was discovered pursuant to a valid protective search. Id. at 1052. In doing so, the Court established the framework for evaluating vehicle searches:

> [A] search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.

Long, 463 U.S. at 1049-50 (internal quotations omitted).

When compared to Long, the circumstances of this case present an even stronger argument in favor of a valid protective search. Here, Officer Andrzejewski's "reasonable belief" that the plaintiff was dangerous and within reach of weapons was based on his knowledge that plaintiff had a gun. According to the plaintiff his gun was in fact located in an area - inside the driver's side door pocket - that was easily accessible. Furthermore, once the plaintiff informed Andrzejewski that he had one gun in his car, it then became objectively reasonable for Andrzejewski to search plaintiff's vehicle to ensure there were not additional guns in the car. In sum, these facts taken together suggest that any "reasonably prudent man in the [same] circumstances would be warranted in the belief that his safety or that of others was in danger." Id. at 1050 (quoting Terry, 392 U.S. at 27)

**C. <u>There are no Material facts in Dispute to Support any Claims by the Plaintiff Against Officer Andrzejewski for an Unreasonable Trunk Search Because Officer Andrzejewski had Probable Cause to Search the Trunk of Plaintiff's Vehicle.</u>**

No longer under the umbrella of a <u>Terry</u> stop and the reasonable suspicion that it requires, the search of plaintiff's trunk demands a different but, in this instance, hardly insurmountable showing. To be sure, the prevailing rule with respect to warrantless searches is that they are generally unconstitutional. <u>See</u>, <u>Coolidge v. New Hampshire,</u> 403 U.S. 443, 454-55 (1971). However, as with any rule, there are exceptions. To that end, the Supreme Court has long recognized an automobile exception to the warrant requirement based on the unique set of concerns faced by law enforcement as they attempt to execute warrants on transient vehicles. <u>See Carroll v. United States</u>, 267 U.S. 132, 153 (1925) (upholding the validity of a warrantless automobile search where there was probable cause to believe that the vehicle contained contraband); <u>see also</u> <u>Pennsylvania v. Labron</u>, 518 U.S. 938, 940 (1995) ("Our first cases establishing the automobile exception to the <u>Fourth Amendment's</u> warrant requirement were based on the automobile's 'ready mobility,' an exigency sufficient to excuse failure to obtain a search warrant once probable cause to conduct the search is clear."). As a result, an officer is allowed to undertake a warrantless search of a car and all areas within the car, including the trunk, provided there is probable cause to believe that the vehicle contains evidence of a crime. <u>See United States v. Ross,</u> 456 U.S. 798, 824-25 (1982) ("If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."); <u>see also</u> <u>United States v. Jackson</u>, 652 F.2d 244, 251 (2d Cir. 1981) (finding probable cause to search trunk where defendant gave unconvincing explanation regarding

broken lock on trunk and officer heard noise within trunk consistent with that of a person hiding).

"Probable cause is a flexible, common-sense standard." Texas v. Brown, 460 U.S. 730, 742 (1983). "Probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." United States v. Bakhtiari, 913 F.2d 1053, 1062 (2d Cir. 1990). "The principal components of a determination of… probable cause will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to… probable cause." Ornelas v. United States, 517 U.S. 690, 696 (1996). Probable cause to search the trunk of a vehicle arises when there is a "fair probability that contraband or evidence of a crime will be found in [that] particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983).

Here, Officer Andrzejewski had probable cause to search plaintiff's trunk based on the gun that was found in the plaintiff's vehicle. It has been held that the discovery of a gun within the passenger compartment of a vehicle is enough, by itself, to constitute probable cause for a trunk search. Indeed, the case of United States v. Brown stands for that very proposition. 334 F.3d 1161, 1171 (D.C. Cir. 2003).   In Brown, an officer investigating a report of recent gun shots approached a parked car and knocked on the window. Brown, 334 F.3d at 1163. When his knocking elicited no response from the vehicle's occupants, the officer slightly opened one of the car doors. Id. Upon doing so, the officer observed a pistol on the floor next to the defendant's foot. Id. The officer then removed the defendant from the car and

handcuffed him, keeping the defendant detained as he searched, first, the interior of defendant's vehicle and, next, the trunk. Id.

The parallels between Brown and this case run deep. Much like the plaintiff here, the defendant in Brown challenged the legality of both the Terry stop and the subsequent trunk search. Id. at 1163. The court found the Terry stop lawful on the basis that each stage of the stop was supported by the requisite showing - the initial seizure by reasonable suspicion and the passenger compartment search by reasonable fear. Id. at 1169. Likewise, the trunk search was deemed justified because it was determined that the officer had probable cause to conduct such a search.[2] The crucial factor supporting the court's finding of probable cause was the officer's discovery of a gun in the passenger compartment of defendant's vehicle. As the court stated:

> [T]he presence of a gun supported the possibility that the car contained ammunition, additional weapons, and/or other contraband. As we have held in the context of Terry searches and in that of searches incident to arrest, the presence of one weapon may justifiably arouse concern that there may be more in the vicinity…. Moreover, the presence of the gun suggested that drugs may have been in the vicinity as well. Cf. United States v. Conyers, 326 U.S. App. D.C. 154, 118 F.3d 755, 757 (D.C. Cir. 1997) (noting the connection between guns and drugs); United States v. Dunn, 269 U.S. App. D.C. 373, 846 F.2d 761, 764 (D.C. Cir. 1988) (describing a revolver as "a tool of the narcotics trade" and holding that the defendant's "connection to the gun suggested he exercised control over the drugs in the house").

Brown, 334 F.3d at 1171 (internal quotations omitted).

---

[2] Because it exceeds the permissible scope of a Terry stop, a trunk search requires a higher burden of proof than does a Terry stop. Accordingly, reasonable suspicion or reasonable fear is not sufficient - an officer must have probable cause in order to legally search a trunk. See Brown, 334 F.3d at 1170 ("The government does not suggest that the opening of the trunk was justified as a Terry search, as such searches are limited to areas immediately accessible to the suspect - in this case, to the passenger compartment of the car.").

As the <u>Brown</u> decision makes clear, "the discovery of contraband in the passenger compartment of a car is a factor that strongly supports the lawfulness of a trunk search." <u>Brown,</u> 334 F.3d at 1173. Nor is <u>Brown</u> an outlier in this respect. Every Circuit that has had occasion to rule on this issue has come out the same way. The Third, Fourth, Sixth, Eighth and Tenth Circuits have all held that the discovery of contraband in the passenger compartment of a vehicle pursuant to a lawful search establishes probable cause for a trunk search. <u>See</u>, <u>e.g.</u>, <u>United States v. Rickus,</u> 737 F.2d 360, 367 (3d Cir. 1984) (discovery of burglary tools in the passenger compartment supplied probable cause to search entire vehicle, including the trunk); <u>United States v. Haley</u>, <u>669 F.2d 201, 204 (4th Cir. 1982)</u> (bag of marijuana and pills hidden under passenger seat combined with emanating odor of marijuana gave officer probable cause to search trunk); <u>United States v. Burnett</u>,  791 F.2d 64, 67 (6th Cir. 1986) (holding that once a marijuana package was seen in plain view on vehicle floor, the officer "had every right to search the passenger area of the car, the trunk, and any and all containers which might conceal contraband."); <u>United States v. Fladten</u>, 230 F.3d 1083, 1086 (8th Cir. 2000) (discovery of drug paraphernalia on back seat of automobile provided agents probable cause to search the trunk); <u>United States v. Parker</u>, 72 F.3d 1444, 1451 (10th Cir. 1995) (holding that officer had probable cause to conduct trunk search when he smelled marijuana in the passenger compartment of vehicle and found corroborating evidence of contraband on defendant's person). There is no reason for this Court to depart from such well-established precedent.

D. **The Defendant Andrzejewski Is Entitled To Qualified Immunity**

    1. **The Defendant did not violate Soukarieh's constitutional rights**

Under the undisputed facts of this case Officer Andrzejewski did not violate Soukarieh's constitutional rights.  Soukarieh is unable to establish that any violation of his Fourth Amended rights occurred.

"The <u>Fourth Amendment</u> prohibits Unreasonable search and seizure of a person and/or his property. Weather the officers action violated the plaintiffs constitutional rights is to be analyzed under that Amendment's 'reasonableness standard.'" <u>Brown v. City of New York</u>, 798 F.3d 94, 100 (2d Cir. 2015) (quoting <u>Graham v. Connor</u>, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) (other internal quotation marks omitted)). The "proper application" of this standard "requires careful attention to the facts and circumstances of each particular case. <u>Graham</u>, 490 U.S. at 396 (emphasis added).

Qualified immunity first requires resolution of a "threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" <u>Saucier v. Katz</u>, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272, 377-378 188 L. 2d 1056 (2014); <u>Plumhoff v. Rickard</u>, 872 U.S. 765 134 S. Ct. 2012 188 L. Ed. 2d (2014); <u>Scott v. Harris</u>, 550 U.S. 372 127 S. Ct. 1769 167 L. Ed. 2d. 686 (2007).  In resolving questions of qualified immunity, courts are required to initially resolve that threshold question.  If, and only if, the court finds a violation of a constitutional right, "the next sequential step is to ask whether the right was clearly established in light of the specific context of the case." <u>Ibid.</u>

Soukarieh's unreasonable search and seizure argument requires analyzing the totality of the circumstances from the perspective "of a reasonable officer on the scene." Graham v. Connor, 490 U. S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443. Soukarieh contends that the Fourth Amendment did not allow a search of his person and vehicle.

In Saucier v. Katz, 533 U. S. 194, 200, 121 S.Ct. 2151, 150 L. Ed. 2d 272 (2001), the Supreme Court held that "the first inquiry must be whether a constitutional right would have been violated on the facts alleged." Only after deciding that question may Appellate Court turn to the question whether the right at issue was clearly established at the relevant time. Ibid.

In Graham v. Connor, 490 U. S. 386, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989); the Supreme Court determined the objective reasonableness of a particular seizure under the Fourth Amendment "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." 490 U. S., at 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (internal quotation marks omitted). The inquiry requires analyzing the totality of the circumstances. See ibid. See also Tennessee v. Garner, 471 U. S. 1, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985)

The Court must analyze this question from the perspective "of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Ibid. Consideration of this issue must allow for the fact that police officers are often forced to make split second judgments in circumstances that are tense, uncertain, and rapidly evolving about what is necessary in a particular situation. Id., at 396-397, 109 S. Ct. 1865, 104 L. Ed. 2d 443.

There is no dispute that Soukarieh was admittedly in possession of a pistol in his vehicle.  Andrzejewski's search and brief detention of the plaintiff and any alleged search of the plaintiffs vehicle were objectively reasonable under the circumstances and therefore did not constitute a violation of the plaintiff's constitutional rights

### 2.  <u>Assuming arguendo that Soukarieh's Fourth Amendment rights were violated Andrzejewski nonetheless is entitled to qualified immunity</u>

Even where an officer is found to have violated a person's constitutional rights, however, the doctrine of qualified immunity will shield that officer from liability for damages if his "conduct d[id] not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Mullenix v. Luna</u>, 136 S. Ct. 305, 308, 193 L. Ed. 2d 255 (2015)(internal quotation marks omitted); <u>see</u>, <u>e.g.</u>, <u>Anderson v. Creighton</u>, 483 U.S. 635, 639, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987).

Qualified immunity protects officials from liability for civil damages as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. <u>Taravella v. Town of Wolcott</u>, 599 F.3d 129, 133 (2d Cir. 2010).  When a defendant invokes qualified immunity, courts consider whether the plaintiff has shown, "(1) that the defendant violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.  <u>Wood v. Moss</u>, 572 U.S. 744, 757, 134 S. Ct. 2056, 188 L. Ed 2d 1039 (20140) (quoting <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 735 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011)).  "A right is clearly established only if its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.'"  <u>Carroll v. Carman</u>, 574 U.S. 13, 135 S. Ct. 348, 350 190 L.

Ed. 2d 311 (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987).

To determine whether the relevant law was clearly established, consideration of whether a right is defined with specificity, the existence of Supreme Court or Court of Appeals case law on the subject, and the understanding of a reasonable officer in light of preexisting law." <u>Terebesi</u>, 764 F. 3d at 222.  An officer entitled to qualified immunity if "any reasonable officer, out of the wide range of reasonable people who enforce the laws in this country, could have determined that the challenged action was lawful."  <u>Figueroa v. Mazza</u>, 825 F. 3d 89, 100 (2d Cir. 2016).  The inquiry on qualified immunity is not whether the officer should have acted as he did, nor is it whether a singular, hypothetical entity exemplifying the "reasonable officer" have acted in the same way.

The United States Supreme Court has repeatedly held that a police officer is entitled to qualified immunity if "a reasonable officer could have believed [his actions] lawful, in light of clearly established law and the information the . . . officer [] possessed."  <u>Anderson v. Creighton</u>, 483 U.S. 635 (1987); <u>White v. Pauly</u>, 137 S. Ct. 548, 551 (2017) (per curiam); <u>Kisela v. Hughes</u>, 138 S. Ct. 1148, 1152 (2018).

In order for the law to be clearly established, "[t]he contours of [a] right must be sufficiently clear that a reasonable [officer] would understand that what he is doing violates that right."  <u>Anderson</u>, 483 U.S. at 640.  In other words, "existing precedent must have placed the constitutional question beyond debate."  <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 741 (2011.)

Moreover, clearly established law must be determined "in light of the specific context of the case, not as broad general proposition."  <u>Brosseau v. Haugen</u>, 542 U.S. 194, 198

(2004).  Indeed, the Supreme Court has repeatedly admonished the Appellate Courts for defining the clearly established law at too high a level of generality.  See, Kisela, 138 S. Ct., at 1152; City and County of San Francisco v. Sheehan, 135 S. Ct. 1765, 1775-76 (2015); al-Kidd, 563 U.S. at 742.  Qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" Id. at 743.

In District of Columbia v. Wesby, 138 S. Ct. 577 (2018), the Court again emphasized, "[w] have not yet decided what precedents - other than our own - qualify as controlling authority for purposes of qualified immunity."  138 S. Ct. at 591 n.8.  The Court held that the officer in the case before it was entitled to qualified immunity for wrongful arrest because the lower court had relied on a single decision from that court, which the Supreme Court found largely inapposite.  The Court emphasized that ''a body of relevant case law' is usually necessary to" clearly establish the law for purposes of qualified immunity. Id. at 590.

Most recently, in City of Escondido v. Emmons, 139 S. Ct. 500, 503 (2019) the Court once again noted that it had not decided what precedents other than its own could clearly establish the relevant law, but granted qualified immunity based upon the absence of applicable law within the circuit in which the case arose concerning the precise factual situation confronted by the officer.

Existing authority must be highly factually analogous to the situation confronted by the officers in a particular case in order to constitute clearly established law for purposes of defeating qualified immunity.  As the Court emphasized in Plumhoff v. Richard, 134 S.Ct. 2012, 2023 (2014), "[T]he crucial question [is] whether the official acted reasonably in the *particular circumstances* that he or she faced." (Emphasis added.)

The Court highlighted the fact-specific nature of the use of force inquiry, which made it essential that there be some authority directly on point in order to defeat immunity.  Kisela v. Hughes, 148 S. Ct. 1148 (2018) (per curiam).  "Use of excessive force is an area of the law 'in which the result depends very much on the facts of each case,' and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue.  Id. at 1153.  In Scott, the Court held that the undisputed evidence in the form of video of the police pursuit and resulting use of force established that the force was reasonable as a matter of law and hence, the Plaintiff had no Fourth Amendment claim.  In Plumhoff v. Richard, 134 S. Ct. 2012, 2021 (2014), citing Scott the Court similarly found that the officers were entitled to judgment because the undisputed evidence established that the force used to terminate a pursuit was reasonable as a matter of law. Scott v. Harris, 550 U.S. 372 (2007).

Andrzejewski is entitled to qualified immunity because it was objectively reasonable for him to believe that, given the undisputed facts, his conduct complied with this clearly established law. Given the undisputed facts of this case, it cannot be said that no reasonable officer, situated as Officer Andrzejewski was, would have searched the plaintiff and his vehicle, including the trunk, and seized and detained the plaintiff in order to verify the validity of his pistol carrying permit.

Under these circumstances, no reasonable officer would have believed that the Search and seizure was unlawful.  Soukarieh posed a potential and imminent threat to the officer and by virtue of the possession of a pistol in his vehicle.

Although as noted previously several other circuits have addressed the parameters of a vehicle search in the presence of the existence of contraband found in the vehicle, however

no Second Circuit or Supreme Court precedent exists establishing that where a person is stopped in a vehicle with the engine running in darkness, in an area of town known for prostitution and drug sales and who admittedly is in possession of a pistol in his vehicle, that there exists a clearly defined right preventing the officer from searching the person and vehicle of the plaintiff, including the trunk for other weapons and/or ammunition and for detaining the person in handcuffs in the back seat of the police vehicle for approximately 30 minutes until such time as a check could be made to determine if the pistol carrying permit was valid. Fourth Amendment jurisprudence had "long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it" and that the reasonableness of the officer's actions must be judged from the perspective of a reasonable officer on the scene rather than with the 20/20 vision of hindsight. Graham v. Connor, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L.Ed 2d 442 (1989).

In summary, Andrzejewski's actions under the undisputed facts of the case were objectively reasonable and cannot be said to have constituted a violation of any clearly established rights of the plaintiff. Accordingly judgment should enter in favor of and Andrzejewski on all claims relating to the search and seizure of the plaintiff's person and property, with the exception of the plaintiff's claim for the confiscation of $320 in cash and a flash drive containing photographs.

For the foregoing reasons, Defendant Andrzejewski respectfully requests that his Motion for Partial Summary Judgment be granted.

DEFENDANT, NICHOLAS ANDRZEJEWSKI

BY:   /s/ Joseph A. Mengacci
        Joseph A. Mengacci
        Federal Bar Number: ct05394
        Office of Corporation Counsel
        235 Grand Street, 3rd Floor
        Waterbury, CT 06702
        Phone: (203) 574-6731
        Fax: (203) 574-8340
        jmengacci@waterburyct.org

## **CERTIFICATE OF SERVICE**

I hereby certify that on the above date a copy of the foregoing, was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

BY:   /s/ Joseph A. Mengacci
        Joseph A. Mengacci
        Federal Bar Number: ct05394

F:\New Electronic Filing System\FILE MANAGEMENT\Litigation\Police\Soukarieh, Basel M. v Andrzejewski, David L19-023\PLEADINGS\MSJ Pre-filing Docs\Our MSJ Memo - Final.docx