UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BASEL M. SOUKANEH,<br><br>*Plaintiff*,<br><br>*v.*<br><br>DAVID ANDRZEJEWSKI,<br><br>*Defendant*. | Civil No. 3:19-cv-1147 (JBA)<br><br>August 6, 2021 |

**RULING GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**I.     Background**

Plaintiff Basel M. Soukaneh brings multiple claims combined in a one-count complaint against Waterbury Police Officer Nicholas Andrzejewski for violation of his Fourth Amendment right to be "free from unreasonable and warrantless arrest and/or detention" and "warrantless and unreasonable search and seizure of his person, vehicle and effects."(Compl. [Doc. # 1] at 2-3.) Defendant files a Motion for Partial Summary Judgment "on all claims relating to the search and seizure of the plaintiff's person and property, with the exception of the plaintiff's claim for the confiscation of $320 in cash and a flash drive containing photographs." (Def.'s Mem. in Supp. of Mot. for Summary J. [Doc. # 20-1] at 23.) Plaintiff opposes summary judgment, arguing that Defendant has mischaracterized the facts and misstated the law. (*See* Pl.'s Mem. in Opp. to Mot. for Summary J. [Doc. # 21] at 2.)

**A.     Undisputed Facts**

At approximately 8:34 pm on November 12, 2018, Plaintiff was operating a Kia Sorento LX in the vicinity of Hillside Avenue and Pine Street in Waterbury, Connecticut. (Def.'s L.R. 56 Statement [Doc. # 20-2] ¶ 1; Pl.'s L.R. 56 Statement [Doc. # 21-1] ¶ 1.) Plaintiff had stopped his vehicle with the engine running in an attempt to unfreeze his iPhone GPS, which was located in a holder mounted to the dashboard. (Def.'s L.R. Statement ¶¶ 3-4; Pl.'s

1

L.R. Statement ¶¶ 3-4.) The dark and high-crime area where Plaintiff stopped his vehicle was well-known for prostitution, drug transactions, and other criminal activity. (Def.'s L.R. Statement ¶ 2; Pl.'s L.R. Statement ¶ 2.) As Plaintiff was attempting to fix his phone, Defendant approached his vehicle, knocked on the driver's side window, and requested[1] Plaintiff's license. (Def.'s L.R. Statement. ¶ 5; Pl.'s L.R. Statement ¶ 5.) Plaintiff handed Defendant his license and gun permit, which he removed from the back of his sun visor. (Def.'s L.R. Statement ¶ 6; Pl.'s L.R. Statement ¶ 6.) At the time Plaintiff handed over his license and gun permit, he told Defendant that he was in possession of a pistol, which was located in the driver's side compartment door. (Def.'s L.R. Statement ¶ 7; Pl.'s L.R. Statement ¶ 7.) Defendant handcuffed and searched Plaintiff, and Defendant forcibly moved[2] Plaintiff to the back of his police car. (Def.'s L.R. Statement ¶ 9; Pl.'s L.R. Statement ¶ 9.) While Plaintiff was inside the police car in handcuffs, Defendant ran a check through the Northwest Communication Center to determine whether the pistol permit was valid. (Def.'s L.R. Statement ¶ 10; Pl.'s L.R. Statement ¶ 10.)

**B.    Plaintiff's Additional Material Facts**

In his statement of additional material facts, Plaintiff states that he had stopped his car to fix his cellphone GPS when Defendant knocked on Plaintiff's window. (Pl.'s L.R. Statement, Addt'l Material Facts ¶ 4.) Plaintiff rolled down his window in response, smiled, and said "hi," and Defendant screamed "your driver's license." (*Id.* ¶¶ 5-7.) Plaintiff notes that the light inside the car was on and thus Defendant was able to see what was happening inside the car as he approached the window. (*Id.* ¶ 37.) After Plaintiff handed Defendant his driver's license and gun permit, Defendant opened the door to Plaintiff's car and said "come out" while forcing Plaintiff's body out of the car. (*Id.* ¶¶ 9-10.) While the engine was still

---

[1] Plaintiff objects to Defendant's characterization of this as a "request," saying it is more properly described as a "shouted demand." (Pl.'s L.R. Statement ¶ 5.)
[2] Defendant says that he "placed" Plaintiff in the car while Plaintiff disputes that characterization. (Def.'s L.R. Statement ¶ 9; Pl.'s L.R. Statement ¶ 9.)

running and Plaintiff was in his seatbelt, Defendant grabbed him by his shoulder and shirt and violently attempted to drag him out of the car. (*Id.* ¶¶ 2-3, 11, 13.) Plaintiff was able to release his seatbelt upon which Defendant pushed him onto the ground and screamed at him. (*Id.* ¶ 14.) Defendant then handcuffed Plaintiff, pushed Plaintiff into the police car, and shouted, "Where's the prostitute? Where's the drugs?" (*Id.* ¶¶ 18-19.) Defendant put his hands in Plaintiff's pocket and declared that he found drugs, which were actually Plaintiff's nitroglycerin pills for his heart. (*Id.* ¶¶ 22-23.) Defendant also removed the $320 cash Plaintiff had in the pocket of his trousers along with a flash drive. (*Id.* ¶ 29.) Defendant then shoved Plaintiff into the back of his police cruiser, where he was bent over and partially on the floor of the vehicle. (*Id.* ¶ 24.) After Plaintiff screamed that his back was in pain, Defendant grabbed his handcuffs, jerked them, and then left Plaintiff in that position where he was facing down and unable to see for several minutes until another officer arrived at the scene and helped him up. (*Id.* ¶¶ 25-26.) At that time, Plaintiff saw Defendant searching his entire car, including the trunk. (*Id.* ¶ 27.)

After the search had concluded, Defendant returned to the cruiser and began writing on his onboard computer at which point he turned to a fellow officer who had arrived at the scene and asked, "What should I write him up for?" (*Id.* ¶¶ 31-32.) The other officer laughed and then the sergeant who had also since arrived told Defendant what to write. (*Id.* ¶¶ 32-33.) Defendant has not returned Plaintiff's flash drive which contains photos and videos of his deceased father or his money. (*Id.* ¶ 34.)

## II.  Legal Standard

Summary judgment is appropriate where, "resolv[ing] all ambiguities and draw[ing] all permissible factual inferences in favor of the party against whom summary judgment is sought," *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008), "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). "A dispute regarding a material fact is genuine if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (internal quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When considering a motion for summary judgment, the Court may consider depositions, documents, affidavits, interrogatory answers, and other exhibits in the record. Fed. R. Civ. P. 56(c).

"The moving party bears the initial burden of showing why it is entitled to summary judgment." *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

> Where, as here, the nonmovant bears the burden of proof at trial, the movant may show prima facie entitlement to summary judgment in one of two ways: (1) the movant may point to evidence that negates its opponent's claims or (2) the movant may identify those portions of its opponent's evidence that demonstrate the absence of a genuine issue of material fact, a tactic that requires identifying evidentiary insufficiency and not simply denying the opponent's pleadings.

*Id.* at 272–73 (citing *Celotex*, 477 U.S. at 323). "If the movant makes this showing in either manner, the burden shifts to the nonmovant to point to record evidence creating a genuine issue of material fact." *Id.* (citing Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)). "Like the movant, the nonmovant cannot rest on allegations in the pleadings and must point to specific evidence in the record to carry its burden on summary judgment." *Id.* (citing *Celotex,* 477 U.S. at 324; *Matsushita,* 475 U.S. at 586).

### III. Discussion

Defendant contends that that the initial stop of Plaintiff's car was justified by his reasonable suspicion of unlawful activity and that the subsequent searches and seizures of Plaintiff's person, the cabin of his car, and the trunk of his car were all supported by probable

4

cause given that Plaintiff disclosed he had a weapon in the vehicle. In the alternative, Defendant argues that he is entitled to qualified immunity because any violated rights were not clearly established.

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated." U.S. Const. amend. IV. The "ultimate touchstone" for an analysis of the constitutionality of a search or seizure is "reasonableness." *Riley v. California*, 573 U.S. 373, 381-382 (2014) (internal quotation marks and citations omitted). "[S]earches conducted outside the judicial process, without prior approval by a judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). "Exceptions to warrant requirement include consent, *see Schenkloth v. Bustamonte*, 412 U.S. 218 (1973); automobile searches, *see United States v. Ross*, 456 U.S. 798 (1982); searches incident to an arrest, *see Chimel v. California*, 395 U.S. 752 (1969); and 'stop and frisk' searches, *see Terry v. Ohio*, 392 U.S. 1 (1968)." *Martinez v. Belcourt*, No. 3:20-cv-286 (SRU), 2020 WL 5118016, at *5 (D. Conn. Aug. 31, 2020).

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). This preserves a balance between the "vindication of citizens' constitutional rights and . . . public officials' effective performance of their duties." *Ziglar v. Abbasi*, __ U.S. __, 137 S. Ct. 1843, 1867 (2017). "The dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Hernandez v. Mesa*, __ U.S. __, 137 S. Ct. 2003, 2007 (2017). Thus, "[d]efendants moving for summary judgment on the basis of qualified immunity bear the burden of demonstrating that no rational jury could conclude (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time

5

of the challenged conduct." *Vasquez v. Maloney*, 990 F.3d 232, 238 (2d Cir. 2021). Districts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

### A. Initial Stop

"Temporary detention of an individual during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment]." *Whren v. United States*, 517 U.S. 806, 809-10 (1996). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id.* at 810. "[O]nce a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." *Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977). An officer conducting a routine traffic stop may "perform a 'patdown' of a driver and any passengers upon reasonable suspicion that they may be armed and dangerous." *Knowles v. Iowa*, 525 U.S. 113, 117-18 (1998).

Defendant's basis for stopping Plaintiff's vehicle was that the car was stopped at night in the roadway with the engine running in an area known for drugs and prostitution. In Connecticut, a parked car may "not obstruct or impede the normal and reasonable movement of traffic." Conn. Gen. Stat. § 14-30. Thus, Defendant observed Plaintiff committing a traffic offense, giving him reasonable suspicion to stop Plaintiff, check his driver's license, and require him to step out of the car.

### B. Handcuffing and Detention in the Police Cruiser

In response to Defendant's request for Plaintiff's driver's license, Plaintiff disclosed that he had a pistol in the side compartment of his door and that he possessed a license to carry the pistol. Plaintiff handed Defendant his driver's license and his pistol permit. At this

point, the Parties' accounts diverge. Plaintiff claims that Defendant grabbed him by the shirt and attempted to drag him out of the car while his seatbelt was still fastened. After Plaintiff was able to unfasten his seatbelt, Defendant violently pushed him to the ground. Although Defendant does not explicitly dispute that he used force to remove Plaintiff from the car, he states simply that Plaintiff "was handcuffed and initially placed up against his vehicle." (Def.'s L.R. 56(a)(1) Statement ¶ 9.)

Legitimate investigatory detentions like Plaintiff's can ripen into arrests, which require a showing of probable cause that the individual committed a crime instead of the lesser showing of reasonable suspicion. *See Grice v. McVeigh*, 873 F.3d 162, 166 (2d Cir. 2017). One hallmark of a *de facto* arrest is handcuffing. *New York v. Quarles*, 467 U.S. 649, 655 (1984). *But see McVeigh*, 873 F.3d at 167-168 (holding that handcuffing may be appropriate in "certain unusual circumstances" during investigative stops).

Defendant conceded at oral argument that his conduct following the initial stop and check of Plaintiff's driver's license exceeded the bounds of a *Terry* stop, but that the conduct was still justified because he had probable cause to believe Plaintiff was possessing a firearm without a permit as he had not yet been able to verify the validity of the permit.

> Probable cause exists when, based on the totality of the circumstances, the officer has 'knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested.'

*Finigan v. Marshall*, 574 F.3d 57, 62 (2d Cir. 2009) (quoting *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007)). In Connecticut, "any person who knowingly has, in any vehicle owned, operated or occupied by such person . . . any pistol or revolver for which a proper permit has not been issued . . . shall be guilty of a class D felony." Conn. Gen. Stat. § 29-38(a).

Because qualified immunity is a complete defense to a false arrest claim, an officer will prevail if only "arguable probable cause" existed. *Grytsyk v. Morales*, ___ F. Supp. 3d ___, 2021 WL 1105368, at *4 (S.D.N.Y. 2021) (citing *Cerrone v. Brown*, 246 F.3d 194, 202 (2d Cir. 2001)). An officer has arguable probable cause when "either (a) it was objectively reasonable

7

for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Amore v. Novarro*, 624 F.3d 522, 536 (2d Cir. 2010). "'Arguable' probable cause should not be misunderstood to mean 'almost' probable cause." *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007). "The essential inquiry in determining whether qualified immunity is available to an officer accused of false arrest is whether it was objectively reasonable for the officer to conclude that probable cause existed." *Id.* "If officers of reasonable competence would have to agree that the information possessed by the officer at the time of arrest did not add up to probable cause, the fact that it came close does not immunize the officer." *Id.*

The question thus becomes whether Plaintiff's disclosure that he had a pistol in the car coupled with presentation of a facially valid, but not yet verified, permit can "arguably" constitute probable cause to believe that he was unlawfully possessing a weapon in his vehicle. An assessment of arguable probable cause requires consideration of the statute Defendant believed Plaintiff might be violating. *See Zalaski v. City of Hartford*, 723 F.3d 382, 390 (2d Cir. 2013). Connecticut General Statutes § 29-38(a) makes the absence of a permit while possessing a firearm inside a vehicle an element of the offense, meaning that there needed to have been some evidence indicating the probability that Plaintiff was not licensed to possess a firearm in order to suspect that he had committed the crime of unlawful possession of a firearm in a vehicle. But at no time did Defendant have any reasonable suspicion or actual knowledge of Plaintiff's possession of the firearm without simultaneously knowing that Plaintiff demonstrated that he had an apparently valid firearm permit. Indeed, it is undisputed that Plaintiff told Defendant that he had a pistol in the driver's side door compartment at the time he handed his driver's license and pistol permit to Defendant. (L.R. Statements ¶¶ 6-7.) And in his deposition, Plaintiff stated that when he handed his license and permit to Defendant, he said, "That's my license and including [sic] my pistol permit, I have a pistol on me." (Soukaneh Dep. Ex. A to Pl.'s Mem. [Doc. # 21-2] at 15-16.) In the

8

absence of any articulable reason for Defendant to believe the permit was counterfeit or otherwise invalid, there is no indication that Plaintiff was even arguably unlawfully possessing a firearm.

In light of the uncontested fact that Plaintiff presented his pistol permit to Defendant before or at the time he disclosed that he was in possession of a pistol and the absence of any other indicia that Plaintiff was otherwise violating the statute, no reasonable officer could believe probable cause was present. Any contrary holding "would eviscerate Fourth Amendment protections for lawfully armed individuals" by presuming a license expressly permitting possession of a firearm was invalid. *United States v. Black*, 707 F.3d 531 (4th Cir. 2013) (holding that an individual openly carrying a firearm, even when in a high-crime area at night, cannot create reasonable suspicion in a state that allows open carry with a permit); *see also Northrup v. City of Toledo Police Dep't*, 785 F.3d 1128, 1132 (6th Cir. 2015) ("The Toledo Police Department has no authority to disregard this decision [permitting open carrying of firearms] by detaining every 'gunman' who lawfully possesses a firearm."); *United States v. King*, 990 F.2d 1552, 1559 (10th Cir. 1993) ("In a state such as New Mexico, which permits persons to lawfully carry firearms, the government's argument [that the presence of a firearm justifies detention] would effectively eliminate Fourth Amendment protections for lawfully armed persons."); *Commonwealth v. Hicks*, 652 Pa. 353, 401 (2019) ("When many people are licensed to do something, and violate no law by doing that thing, common sense dictates that the police officer cannot assume that any given person doing it is breaking the law."). To accept Defendant's reasoning would permit police officers to detain any driver because he or she may have a counterfeit or otherwise invalid driver's license which has been rejected by the Supreme Court. *See Delaware v. Prouse*, 440 U.S. 648, 660 (1979) (holding spot checks of vehicles to determine the valid licensure of the driver unconstitutional); *Hicks*, 652 Pa. at 395 ("[T]he government may not target and seize specific

individuals without any particular suspicion of wrongdoing, then force them to prove that they are *not* committing crimes.").

Because, on the record read in the light most favorable to the non-moving party, no reasonable police officer could have believed he or she had probable cause to arrest Plaintiff, the Court denies summary judgment on the lawfulness of the *de facto* arrest and declines to immunize the officer on this record.

### C.    Search of the Passenger Compartment of the Car

Because the Court denies Defendant's motion for summary judgment on Plaintiff's *de facto* arrest, finding it was without probable cause, the search of Plaintiff's vehicle cannot be justified as a lawful search incident to arrest. *See Arizona v. Gant*, 556 U.S. 332 (2009). *Michigan v. Long* permits

> the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden . . . if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officers in believing that the suspect is dangerous and that the suspect may gain immediate control of weapons.

463 U.S. 1032, 1049 (1983) (quoting *Terry*, 392 U.S. at 1). Distinguished from probable cause, the key inquiry for determining whether the search of a vehicle during a traffic stop is lawful is whether an officer was in reasonable apprehension of danger. Commission of a traffic infraction without more does not present any reasonable apprehension of danger and does not justify the type of search articulated in *Long*. *United States v. Hussain*, 835 F.3d 307, 315 (2d Cir. 2016) (holding that a stop for a traffic violation did not justify a vehicle search because "the officers fail[ed] to demonstrate that their fear of immediate danger was objectively reasonable").

Although the initial stop of Plaintiff for suspicion of a traffic violation was justified, "[e]ven . . . a traffic stop . . . based on probable cause or reasonable suspicion at the outset . . . can violate the Fourth Amendment if its manner of execution unreasonably infringes

interests protected by the Constitution." *United States v. Gomez*, 877 F.3d 76, 86 (2d Cir. 2017). Here, the Court must determine whether Plaintiff's presentation of his firearms permit and his disclosure that he had a pistol in the driver's side door could have led a police officer to reasonably believe that Plaintiff was armed and dangerous.

Defendant contends that *Michigan v. Long* requires the Court to find that there was a objectively reasonable basis to suspect that Plaintiff was dangerous because of the known presence of his gun. (*See* Def.'s Mem. at 12). In *Long*, police officers "observed a car traveling erratically and at an excessive speed" when it "swerved off into a shallow ditch." 463 U.S. at 1035. Officers stopped to investigate the scene, and Mr. Long exited the vehicle, leaving the door to the car open. *Id.* at 1035-36. Officers requested that Mr. Long produce his driver's license, and although he initially refused to produce it, he eventually complied. *Id.* at 1036. Officers then twice requested that Long produce his vehicle registration, to which Long did not respond either time. *Id.* Given his non-responsiveness, officers suspected he might be under the influence of drugs or alcohol and one officer walked toward the open door of the vehicle, where he "observed a large hunting knife on the floorboard of the driver's side of the car." *Id.* The officer then searched the car for other weapons and came across a pouch with marijuana in the passenger compartment and then seventy-five pounds of marijuana in the trunk. *Id.* Long moved to suppress the evidence of the marijuana on the grounds that the search was not justified under *Terry*. *Id.* The Court held that officers may "conduct an area search of the passenger compartment [of a car] to uncover weapons, as long as they possess and articulable and objective reasonable belief that the suspect is potentially dangerous. *Id.* at 1051. Although Mr. Long was outside of his car at the time of the search, the Court reasoned that "if he [was] not placed under arrest, he [would] be permitted to reenter his automobile and . . . have access to the weapons inside," thereby posing a danger to officers. *Id.* at 1052.

The case here is distinctively factually different from *Long*. The facts read in the light most favorable to Plaintiff demonstrate that he was friendly and compliant when Defendant approached the vehicle, rolling down his window, providing his license, and volunteering the presence of his firearm and permit. Defendant did not articulate any facts suggesting, for instance, that Plaintiff was resistant or that he could be under the influence of drugs or alcohol. Moreover, Defendant learned about Plaintiff's firearm not by discovering it lying out in the open on the floor like the knife in *Long*, but by Plaintiff's voluntary disclosure and his production of his permit authorizing him to possess that weapon. The indicia of potential danger present in *Long* were not present here.

The Second Circuit affirmed that at an officer needs more than mere presence of a weapon for which the possessor is licensed,[3] to justify searching a car during the course of a traffic stop. *Hussain*, 835 F.3d at 308. In *Hussain*, an individual ran a stop sign in front of police officers in a high-crime neighborhood in the Bronx when officers turned on their lights and pulled him over. 835 F.3d at 310, 315. "Neither officer [at the scene] noticed anything unusual about the car," and the defendant promptly pulled over into an open parking spot. *Id.* When the officers approached the car, one noticed the driver move his arm toward the console area to pick up a smart phone and observed him sitting in an "unnatural" position. *Id.* The officer directed the defendant to put down his smartphone, and the defendant refused to immediately comply. *Id.* He then asked if the defendant had any weapons, to which the defendant responded he had a pocketknife. *Id.* at 317. The pocketknife was recovered upon frisking him, and the officers proceeded to search his car, where they found a loaded gun under the front passenger seat. *Id.* at 311, 317. Despite the driver's initial noncompliance

---

[3] "Although the right to keep and bear arms serves as important conceptual backing to numerous legal issues surrounding firearms and the enforcement of criminal law, our analysis will not focus upon the contours of that right" because this case is about unreasonable search and seizure and therefore its analysis falls under the Fourth Amendment. *Hicks*, 652 Pa. at 367 n.5.

with officers' directives, his suspicious body position, and the presence of the knife, the Second Circuit nonetheless concluded that the facts failed "to demonstrate that [the officers'] fear of immediate danger was objectively reasonable so as to justify a full field-type search of [the defendant's] car." *Id.* at 315.

Plaintiff's circumstances were far less suspicious than those in *Hussain*: Plaintiff readily complied with all of Defendant's directives, voluntarily disclosed the presence of his lawfully-owned pistol, and handed Defendant his permit to carry that pistol, all of which demonstrate a far safer situation for Defendant.

On this record, no reasonable officer could conclude that Plaintiff posed a meaningful threat of being "armed *and* dangerous" simply because he disclosed that he had a pistol and a license to possess it. *Knowles*, 525 U.S. at 118 (emphasis added). Any contrary holding would make it practically impossible for the lawful owner of a firearm to maintain a Fourth Amendment right to privacy in his or her automobile. *See supra* 9-10.  The Court therefore denies summary judgment on the search of the vehicle and declines to immunize the office.

### D. Search of the Car's Trunk

*Michigan v. Long* clearly articulates that a protective search of an automobile based on reasonable suspicion is permissible only as to "the passenger compartment of an automobile, limited to those areas in which weapons may be placed or hidden," and the Court expressly declined to address to the constitutionality of any related trunk search. 463 U.S. at 1049. Moreover, Defendant conceded in his memorandum and at oral argument that "a trunk search requires a higher burden of proof than does a *Terry* stop," which necessitates a finding of only reasonable suspicion. (Def.'s Mem. at 15 n.2 (citing *United States v. Brown*, 334 F.3d 1161, 1171 (D.C. Cir. 2003)).) Since this record shows that no reasonable officer would believe he or she had probable cause to believe Plaintiff was committing or had committed the crime of unlawful possession of the firearm in a vehicle, summary judgment must be denied as to the search of the trunk as well.

## IV. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED as to the initial stop and DENIED as to the *de facto* arrest of Plaintiff, the search of the passenger compartment of his car, and the search of his automobile trunk.

                      IT IS SO ORDERED.

                      /s/
                      Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 6th day of August 2021.